UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN BELL, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NUSIL TECHNOLOGY LLC, *et al.*,<br><br>Defendants. | No. 1:20-cv-00061-NONE-JLT<br><br><u>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND UNDER 28 U.S.C. § 1447</u><br><br>(Doc. No. 3) |

Before the court is plaintiff Nathan Bell's motion to remand this wage-and-hour putative class action to the Kern County Superior Court, where it was originally filed. (Doc. No. 3.) Plaintiff's former employers, defendants NuSil Technology, LLC and Avantor Performance Materials, LLC, timely removed this action from state court to this federal court on January 13, 2020 pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (Doc. Nos. 1–2.) Defendants have opposed the motion and plaintiff has filed a reply. (Doc. Nos. 6–7.)

Pursuant to Local Rule 230(g) and General Order No. 617, the court has taken this matter under submission on the papers without holding a hearing. For the reasons set forth below, the court will grant plaintiff's motion to remand.

/////

/////

1

**BACKGROUND**

Plaintiff's complaint asserts nine causes of action for violations of various provisions of the California Labor Code, including failure to pay or timely pay overtime, rest and meal period premiums, and final wages; to comply with wage statements; to keep requisite payroll records; and to reimburse for business expenses. (Doc. No. 2-1, Compl.) Plaintiff's tenth and final cause of action is for violation of the California Business and Professions Code § 17200, *et seq*. (*Id.* ¶ 26.) According to plaintiff, defendants engaged in a "pattern and practice" of violating California wage-and-hour laws. (*Id.*) From May 2013 to May 2018, defendants allegedly employed plaintiff as an hourly-paid or non-exempt employee in California and plaintiff now seeks to be a class representative of other similarly-situated California employees who worked or have been working for defendants at any time between October 2015 to the entry of final judgment in this case. (*Id.* ¶¶ 13–14, 18–19.) Plaintiff does not know the membership of the entire class but estimates there are over 50 class members. (*Id.* ¶ 16a.) Defendants claim in their removal papers, however, that 256 full-time employees fit within plaintiff's class definition in 2016; 297 full-time employees in 2017; 271 full-time employees in 2018; and 292 full-time employees in 2019. (Doc. No. 2-2 ¶¶ 4–8.)

Plaintiff's complaint does not specify the amount in controversy, either personally with respect to plaintiff or in aggregate as to the putative class.[1] (*See* Doc. No. 2-1, Compl.) In the absence of an allegation regarding the amount in controversy, defendants assert in their notice of removal that they may be liable for up to $6,605,324.34 in damages, including attorneys' fees. (Doc. Nos. 1 ¶ 11; 6-2 ¶ 14). This estimate of defendants' potential liability is based on the personal knowledge of Caroline Flood, an employee in defendants' human resources department, who has reviewed defendants' employment records and plaintiff's complaint. (Doc. Nos. 2-2 ¶¶ 1, 3–12; 6-2 ¶¶ 1, 4, 6–12.) In sum, defendants' estimat0ion of the amount in controversy is

---

[1] Nonetheless, plaintiff classified his complaint in the Kern County Superior Court as an *unlimited* action. (*See* Doc. No. 2-1 at 1.) In California, such classification implies that the amount in controversy exceeds $25,000, or the case "otherwise violate[s] the necessary conditions for classification as a limited civil case." *Stratton v. Beck*, 9 Cal. App. 5th 483, 493 (2017) (alteration in original) (citation omitted).

calculated as follows:

| Plaintiff's Claims | Estimated Class Damages 2016 to 2019 |
|---|---|
| Claim for Unpaid Overtime | $1,771,020.39 |
| Claim for Meal Period Premiums | $1,172,619.54 |
| Claim for Rest Break Premiums | $1,172,619.54 |
| Claim for Wage Statement Penalties | $1,168,000.00 (2019 only) |
| **Subtotal** | $5,284,259.47 |
| Attorneys' Fees Calculated at 25% Rate | $1,321,064.87 |
| **Total** | $6,605,324.34[2] |

(Doc. Nos. 2-2 at 5; 6-2 ¶ 14.)

## LEGAL STANDARD

A suit brought in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a); *see also Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress."). Under CAFA, federal courts have original jurisdiction "over certain class actions, defined in [28 U.S.C.] § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)). "Congress enacted CAFA to 'curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts.'" *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1067 (9th Cir. 2019) (quoting *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1090 (9th Cir. 2010)). The Supreme Court has held that there is "no presumption against removal jurisdiction [under CAFA] and that CAFA should

---

[2] This estimation excludes plaintiff's other claims, such as "failure to reimburse expenses, failure to timely pay wages at the time of termination, failure to timely pay wages during employment, unpaid minimum wages, and failure to keep requisite payroll records." (Doc. No. 6-2 ¶ 15.)

3

be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) (alteration in original) (quoting *Dart Cherokee*, 574 U.S. at 89).

"The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (citation omitted); *see also Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) ("[T]he plaintiff is 'master of her complaint' and can plead to avoid federal jurisdiction."). "A defendant seeking removal must file in the district court a notice of removal 'containing a short and plain statement of the grounds for removal . . . .'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting 28 U.S.C. § 1446(a)). "'[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be *accepted* when *not contested* by the plaintiff or questioned by the court.' '[A] defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold,'" and "need not contain evidentiary submissions." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922, 927 (9th Cir. 2019) (emphasis added) (quoting *Dart Cherokee*, 574 U.S. at 87–89; *Ibarra*, 775 F. 3d at 1197); *see also* 28 U.S.C.A. § 1446(c)(2) (With certain exceptions, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy").

"Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee*, 574 U.S. at 89. If evidence is required, "[b]oth parties may submit evidence supporting the amount in controversy before the district court rules." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). Nonetheless, the defendant seeking removal bears the ultimate burden of showing "by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra*, 775 F. 3d at 1197; *see also Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (observing that a preponderance of the evidence means "it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional threshold.). This burden may be satisfied by submitting "affidavits or declarations, or other

'summary-judgment-type evidence relevant to the amount in controversy at the time of removal,'" *Ibarra*, 775 F. 3d at 1197, or by relying on a chain of reasoning that includes reasonable assumptions. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015); *see also Arias*, 936 F.3d at 925 (holding that "[a]n assumption may be reasonable if it is founded on the allegations of the complaint."). Removal is proper "if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. *Dart Cherokee*, 574 U.S. at 88 (citations omitted).

The amount in controversy is *not* the amount of damages that plaintiff will likely recover, *see Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018), nor is it "a prospective assessment of defendant's liability," *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010). Rather, it "is simply an estimate of the total amount in dispute." *Id.* Thus, the amount in controversy merely "reflects the maximum recovery the plaintiff *could reasonably* recover." *Arias*, 936 F.3d at 927 (emphasis added).

## ANALYSIS

Defendants claim that the court has CAFA jurisdiction over this action because there is minimal diversity between the parties, at least 101 class members,[3] and over $5 million is in controversy (exclusive of interest and costs). (Doc. Nos. 1 ¶¶ 4–5, 10–11; 2-2 ¶¶ 4–8.) The only issue before the court in resolving the pending motion is the amount in controversy. More precisely, plaintiff argues that "all of Defendants' calculations [as to the amount in controversy] should be disregarded" because they are based on speculations and assumptions. (Doc. No. 3 at 5–6, 8.) For reasons explained below, the court concludes that defendants have failed to meet their burden of establishing, by a preponderance of the evidence, the amount in controversy as to plaintiff's wage statement claim and attorneys' fees in connection with that claim.[4]

---

[3] Flood states that "Defendant Avantor does not have any employees who fall within" plaintiff's putative class definition. (Doc. Nos. 2-2 ¶ 8; 6-2 ¶ 4e.) It appears, therefore, that all members of plaintiff's proposed class are current or were former employees of defendant NuSil only. (*See* Doc. Nos. 2-2 ¶¶ 4–7; 6-2 ¶¶ 4a–d.)

[4] The court need not and does not address the other aspects of defendants' estimated amount in controversy based on other claims.

5

### A.     Claim for Wage Statement Penalties (7th Cause of Action)

Plaintiff's seventh claim is based on defendants' alleged intentional and willful failure to provide plaintiff and the putative class members with "complete and accurate wage statements" of the total number of work hours. (Doc. No. 2-1, Compl. ¶ 97.)  In California, employers must furnish their employees with "an accurate itemized statement in writing" showing, among other things, gross wages earned, hourly rates, and the corresponding number of hours worked at each hourly rate.  Cal. Lab. Code § 226(a).  If an employer knowingly and intentionally fails to do so, the employee suffering injury "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)."  Cal. Lab. Code § 226(e).

Defendants argue that $1,168,000 is the maximum amount in dispute which plaintiff could reasonably recover were plaintiff to prevail on the seventh claim, which is calculated as follows: $4,000 in maximum statutory penalty x 292 full-time employees in 2019 = $1,168,000.[5]  (Doc. Nos. 2-2 ¶ 7; 6 at 10; 6-2 ¶ 13; *see also* Doc. No. 2-1, Compl. ¶¶ 95–101.)  There are three assumptions underlying this estimate advanced by defendants:  (1) a $4,000 maximum statutory penalty; (2) the number of full-time employees defendants had in 2019; (3) and a 100% violation rate of § 226(a) as to all of defendants' full-time employees in 2019.

In support of the second assumption, defendants' employee Flood declares, based on her experience working in defendants' human resources departments and review of the relevant

---

[5] Defendants argue that this calculation is "conservative" because it includes only "those employees at NuSil" in 2019, and *not* those from 2016 to 2018.  (Doc. No. 6 at 10.)  It is questionable whether the penalties under California Labor Code § 226(e) is recoverable for events preceding 2019 since a claim for such penalties would be subject to California Code of Civil Procedure § 340's one-year time limitations, and plaintiff filed the complaint in the Kern County Superior Court in January 2020 (Doc. No. 2-1 at 3).  *See Soto v. Tech Packaging, Inc.*, No. ED CV 19-1766-MWF, 2019 WL 6492245, at *6 (C.D. Cal. Dec. 3, 2019) ("Claims for penalties under section 226 are subject to a one-year statute of limitations."); *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1469 (2015) (applying California Code of Civil Procedure § 340 to determine whether a claim for penalties under California Labor Code § 226(e) is time-barred).  The court need not reach this issue, however, since defendants have neither argued nor demonstrated that § 226(e) penalties preceding 2019 should be included in their calculation of the amount in controversy.  (*See* Doc. Nos. 2-2 at 5; 6 at 10.)

employment records, that there were 292 employees in 2019 who fit plaintiff's definition of the putative class. (Doc. No. 6–2 ¶ 4d.) The court finds this assumption reasonable and supported by the evidence presented.

As for the first and third assumptions upon which defendants' calculation relies, plaintiff contends that defendants have not established the factual basis for those assumptions by a preponderance of the evidence. (Doc. Nos. 3 at 8–9; 7 at 5–6.) The court agrees in part. Defendants have failed to establish the assumption on the $4,000 in maximum statutory penalty by a preponderance of the evidence.[6] (*See* Doc. Nos. 6 at 10; 6–2 ¶ 13.) There is neither evidence nor allegations in plaintiff's complaint to support that assumption, and defendants point to none in their opposition to the pending motion. (*See* Doc. Nos. 2-1, Compl.; 2-2, 6-2.) Thus, defendants' assumption of a maximum statutory penalty is unreasonable and must be disregarded. *See, e.g.*, *Garcia v. Shasta Beverages Inc.*, No. CV 19-10222 PA (AFMx), 2020 WL 598508, at *4–5 (C.D. Cal. Feb. 5, 2020) (holding that the defendants have failed to establish $4,000 in maximum statutory penalty by a preponderance of the evidence in calculating the amount in controversy under CAFA); *Zamarripa v. Superior Talent Res., Inc.*, No. SA CV 19-0982-DOC (MAAx), 2019 WL 3246502, at *5 (C.D. Cal. July 19, 2019) (holding that "it is unreasonable to assume $4,000 in statutory damages is in dispute for each Class Member."); *Marshall v. Faneuil,*

---

[6] As to the third assumption, district courts in this circuit have found a 100% violation rate to be reasonable in calculating the amount in dispute of a wage statement claim under certain circumstances. For example, if an employer is alleged to have failed to consistently and accurately itemize the unpaid meal or rest periods of its employees' wage statements, since a wage statement claim is a "derivative" of the allegations of meal or rest period violations. *Gipson*, 2020 WL 4048503, at *8; *see, e.g.*, *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908, at *7 (E.D. Cal. Oct. 8, 2020) (holding that one meal or one rest period violation per week "serve[s] as the basis for a calculation of wage statement penalties based on a 100 percent violation rate."); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, No. 19CV1675-GPC(BLM), 2019 WL 5677846, at *8 (S.D. Cal. Nov. 1, 2019) ("[S]ince one missed meal and rest period was reasonable, that would mean that every wage statement was inaccurate and subject to the penalties."); *Archuleta v. Avcorp Composite Fabrication, Inc.*, No. CV 18-8106 PSG (FFMx), 2018 WL 6382049, at *6 (C.D. Cal. Dec. 6, 2018) ("To accept the assumption that employees' wage statements were inaccurate during each pay period, one needs only assume that each employee worked at least one day per pay period."). Although the 100% violation rate presumed by defendants here *may* be reasonable in light of the foregoing, the court need not reach that issue in light of the conclusions reached above.

7

*Inc.*, No. 2:17-cv-01975-KJM-CKD, 2018 WL 3738372, at *3 (E.D. Cal. Aug. 7, 2018) (holding the "assumption that plaintiff will recover the statutory maximum penalty for each pay period . . . is not supported by the evidence defendant presents" and, as a result, the defendants have failed to meet their burden).

More significantly, the evidence submitted by defendants demonstrates that they could *not* have incurred $4,000 in maximum statutory penalty per employee in a year.  For instance, their employee Flood attests that there are "26 pay periods in each year," suggesting that defendants could have only provided a maximum of 26 *inaccurate* wage statements each year per employee. (Doc. No. 6-2 ¶ 5.)  It follows that the maximum penalty plaintiff could recover under § 226(e) on behalf of each proposed class member in a year is $2,550 (1st violation x $50 + 25 remaining violations x $100).  However, it would not be appropriate for the court to assume an alternative penalty of $2,550 to be reasonable.  As the Ninth Circuit has instructed, district courts "should weigh the reasonableness of the removing party's assumptions, *not* supply further assumptions of its own."  *Harris*, 980 F.3d at 701 (emphasis added).  Therefore the court will exclude the $1,168,000 in its entirety thereby reducing defendants' estimated amount in controversy to $5,437,324.34.[7]

**B.     The Amount of Attorneys' Fees in Controversy**

"'[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.'  The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence."  *Arias*, 936 F.3d at 927 (quoting *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 788, 794 (9th Cir. 2018)).  In his complaint, plaintiff seeks the award of attorneys' fees under various provisions of the California Labor Code and Code of Civil Procedure.  (Doc. No. 2-1, Compl. ¶¶ 8, 15, 27, 48, 51, 56.)  There is no dispute between the parties that attorneys' fees are recoverable under these statutes (*see* Doc. Nos. 3, 6, 7).  In dispute, however, is whether defendants have established by a preponderance of the evidence that the attorneys' fees in

---

[7]  $6,605,324.34 - $1,168,000 = $5,437,324.34.  (*See* Doc. Nos. 2-2 at 5; 6-2 ¶ 14.)

controversy should be calculated at a rate of 25%. (Doc. No. 7 at 3–4; *see also* Doc. Nos. 1 ¶ 11; 2-2 ¶ 11; 6-2 ¶ 11.)

Here, defendants submit no evidence to justify the proposed 25% rate for attorneys' fees in controversy. (*See* Doc. Nos. 1, 2-2, 6-2.) Rather, they argue that the rate constitutes a "reasonable assumption" of attorneys' fees at the pleading stage as a matter of law regardless of the lack of evidence to support that percentage award. (Doc. No. 6 at 2, 5.) However, the Ninth Circuit has rejected calculation of attorneys' fees in controversy for purposes of CAFA at a 25% rate as a matter of law, and held instead that "the defendant *must* prove the amount of attorneys' fees at stake by a preponderance of the evidence," noting that courts "may *not* relieve the defendant of its evidentiary burden by adopting a *per se* rule for one element of the amount at stake in the underlying litigation." *Fritsch*, 899 F.3d at 796 (emphasis added).

There is a split among district courts in California as to whether to automatically calculate attorneys' fees in controversy at a 25%, or a different rate, without evidence in light of the decision in *Fritsch*. *See Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1193–94 (E.D. Cal. 2020) (recognizing the split among district courts in California as to whether attorneys' fees in controversy should be calculated at a 25% rate even without evidence establishing such rate). *Compare Ramos v. MOOG Inc.*, No. CV 19-10775-AB (SSX), 2020 WL 969023, at *4 (C.D. Cal. Feb. 27, 2020) (adopting a 13.86% rate in attorneys' fees in controversy without evidence establishing such rate); *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *7 (N.D. Cal. Oct. 25, 2019) (adopting a 15% rate in determining the attorneys' fees in controversy, without evidence, based on custom and experience); *Cortez v. United Nat. Foods, Inc.*, No. 18-CV-04603-BLF, 2019 WL 955001, at *5 (N.D. Cal. Feb. 27, 2019) (applying a 25% rate in determining the attorneys' fees in controversy because, "[p]laintiff does not raise any factors counseling against the application of the 25% benchmark," and the record does not reflect "a departure from this benchmark."); *Ramirez v. Benihana Nat'l Corp.*, No. 18-cv-05575-MMC, 2019 WL 131843, at *2 (N.D. Cal. Jan. 8, 2019) (same) *with Garcia v. Shasta Beverages Inc.*, No. CV 19-10222 PA (AFMx), 2020 WL 598508, at *7 (C.D. Cal. Feb. 5, 2020) (disregarding the proposed 25% rate in attorneys' fees in controversy for lack of evidentiary support); *Snow v.*

1 *Watkins & Shepard Trucking, Inc.*, No. ED CV 18-2206-DMG (SPx), 2019 WL 1254571, at *4
2 (C.D. Cal. Mar. 18, 2019) (same); *Zamarripa*, 2019 WL 3246502, at *6 (same). It is the
3 undersigned's view that in *Fritsch* the Ninth Circuit required that any rate of attorneys' fees in
4 controversy be established by a preponderance of the evidence. *See Gipson v. Champion Home*
5 *Builders, Inc.*, No. 1:20-cv-00392-DAD-SKO, 2020 WL 4048503, at *9 (E.D. Cal. July 20, 2020)
6 ("Consistent with the Ninth Circuit's opinion in *Fritsch*, the court will not relieve defendant of its
7 evidentiary burden in this regard."); *Castillo v. Trinity Servs. Grp., Inc.*, No. 1:19-cv-01013-
8 DAD-EPG, 2020 WL 3819415, at *9 (E.D. Cal. July 8, 2020) (same); *Avila*, 432 F. Supp. 3d at
9 1193 (same).

10 Here, because defendants have failed to establish the proposed 25% rate in attorneys' fees
11 in controversy by a preponderance of the evidence, the court will decline to incorporate
12 defendants' proposed rate into the amount-in-controversy calculation. *See, e.g.*, *Arias*, 936 F.3d
13 at 928 (declining to calculate attorneys' fees in controversy at a 25% rate without evidentiary
14 support); *Schwarz v. Triwest Healthcare All. Corp.*, No. 2:20-cv-00312 KJM EFB, 2020 WL
15 4195778, at *4 (E.D. Cal. July 21, 2020) (same); *Salazar v. PODS Enters., LLC*, No. 19-cv-260-
16 MWF-KKx, 2019 WL 2023726, at *9 (C.D. Cal. May 8, 2019) (same). *But see, e.g.*, *Felipe*
17 *Vasquez v. RSI Home Products, Inc., et. al.*, No. 8:20-cv-01494-JWH-JDEx, 2020 WL 6778772,
18 at *10 (C.D. Cal. Nov. 12, 2020) (relying on court awards of attorneys' fees to plaintiff's attorney
19 in two previous class action cases as evidence supporting a finding that a 25% rate is reasonable);
20 *Lopez v. First Student, Inc.*, 427 F. Supp. 3d 1230, 1238 (C.D. Cal. 2019) (same); *Gonzalez v.*
21 *Comenity Bank*, No. 1:19-cv-00348-AWI-EPG, 2019 WL 5304925, at *11 (E.D. Cal. Oct. 21,
22 2019) (factoring attorneys' fees into the amount-in-controversy calculus based on counsel's
23 affidavit stating his hourly rate and the court's knowledge of customary rates in comparable
24 cases); *Reyes v. Staples Office Superstore, LLC*, 2019 WL 4187847, at *5 (C.D. Cal. Sept. 3,
25 2019) (same). Without the proposed 25% rate in attorneys' fees in controversy, or $1,321,064.87,
26 defendants' estimated total amount in controversy is reduced to $4,116,259.47—well below the
27 /////
28 /////

jurisdictional threshold.[8]  (Doc. Nos. 2-2 at 5; 6-2 ¶ 14.)  Moreover, even if the court were to assume a 15% attorneys' fee award, or $617,438.92,[9] was *per se* reasonable, *see Kastler*, 2019 WL 5536198, at *7, and add that into the reduced amount in controversy, that would still put the total amount in controversy at $4,733,698.39 – below the threshold amount.[10]  *But see Harris*, 980 F.3d at 701 (holding that courts should "*not* supply further assumptions of its own," and should only weigh the reasonableness of the assumptions given by the removing party).

## CONCLUSION

Because defendants have failed to establish that the amount in controversy exceeds $5 million, as required by § 1332(d)(1), the court has no CAFA jurisdiction over this action.  The court declines to reach defendants' remaining amount-in-controversy calculation based on the other claims and costs.[11]  Because defendants have failed to satisfy their burden of establishing removal jurisdiction by a preponderance of the evidence, plaintiff's motion to remand (Doc. No. 3) is GRANTED.  This lawsuit is hereby REMANDED to the Kern County Superior Court.

IT IS SO ORDERED.

Dated:  **March 30, 2021**

UNITED STATES DISTRICT JUDGE

---

[8] $5,437,324.34 (without the wage statement claim) - $1,321,064.87 in attorneys' fees in controversy = $4,116,259.47.  (*See supra* note 7.)

[9] $4,116,259.47 x 0.15 = $617,438.92.

[10] $4,116,259.47 (without the wage statement claim and attorneys' fees in controversy) + $617,438.92 in attorneys' fees in controversy = $4,733,698.39.

[11] In addition to the other claims, defendants suggest that between $33,000 and $150,000 in costs for appointment of receiver should be included in the amount-in-controversy calculus, given that plaintiff seeks the appointment of a receiver as relief in the complaint. (Doc. No. 6-1, Fassett Decl. ¶¶ 4–6.)  It is unclear, however, if such costs should be incorporated as part of an amount in controversy.  *See Fritsch*, 899 F.3d at 793 (defining "amount in controversy" to include "damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract," but exclusive of "any interests and [other] costs").  Nevertheless, even if $150,000 in costs for appointing a receiver is added to the reduced amount in controversy of $4,116,259.47, defendants still fall short of the $5 million jurisdictional threshold.